IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:22-CV-151-FL

| | |
|---|---|
| EXCLUSIVE JETS, LLC, | )<br>)|
| Plaintiff, | )<br>)|
| v. | )<br>)     ORDER |
| A1 AVIATION, LLC, | )<br>)|
| Defendant | )<br>)|
| ––– | |
| A1 AVIATION, LLC, | )<br>)|
| Counterclaim Plaintiff, | )<br>)<br>)|
| v. | )<br>)|
| EXCLUSIVE JETS, LLC, | )<br>)|
| Counterclaim Defendant. | )<br>)|

    This matter comes before the court on plaintiff's motions to modify case management order (DE 87) and to reconsider order allowing partial judgment on the pleadings and for leave to file first amended complaint (DE 88).[1] The issues raised are ripe for ruling. For the following reasons, the instant motions are denied.

## STATEMENT OF THE CASE

    Plaintiff commenced this action with complaint filed November 18, 2022, in the Superior

---

[1] Also pending but not yet ripe is defendant's motion for summary judgment, (DE 91), the briefing schedule for which the court addresses further herein.

Court of Lenoir County, North Carolina, asserting claims for declaratory judgment, breaches of contract and quiet enjoyment, unjust enrichment, and lost profits, related to an aircraft it leased from defendant. Plaintiff seeks damages, declaratory judgment, costs, and attorneys' fees.

Defendant removed to this court December 5, 2022, on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b). On December 9, 2022, defendant denied plaintiff's claims in answer including counterclaims for conversion, breach of contract, and tortious interference with contract or prospective contract. Defendant also moved for an order granting claim and delivery of described aircraft materials pursuant to N.C. Gen. Stat. §§1-472 et seq. The court granted that motion at hearing February 3, 2023.

On February 15, 2023, the court entered case management order governing discovery deadlines and setting expedited date for trial. Pursuant to the case management order, motions for leave to amend the pleadings were due from plaintiff by February 17, 2023, and from defendant by March 3, 2023. Defendant thereafter amended its answer and counterclaims to include factual allegations concerning additional asserted breaches of the contract by plaintiff and plaintiff's alleged interference with a proposed sale of the aircraft. Plaintiff answered, and defendant filed motion for judgment on the pleadings April 24, 2023, seeking dismissal of plaintiff's claims, judgment as a matter of law on plaintiff's declaratory judgment claim, and judgment as a matter of law on defendant's counterclaims.

In the meantime, plaintiff moved to continue trial, and defendant moved to expedite the court's approval of its proposed sale of the aircraft. Plaintiff did not oppose sale but requested that the sale proceeds be held in escrow. Following telephonic hearing May 10, 2023, the court approved expedited sale of the aircraft and ordered $200,000.00 in proceeds from that sale be paid

into the office of the clerk of court during pendency of the litigation.² By separate order entered May 12, 2023, the court stayed discovery activities not initiated as of the date of hearing and continued trial pending disposition of the motion for judgment on the pleadings.

In order entered January 5, 2024, (hereinafter, the "prior order"), the court granted in part defendant's motion, dismissed plaintiff's claims for unjust enrichment and special damages, and lifted the stay. The parties recommenced discovery pursuant to amended case management order entered February 1, 2024. Deadlines were twice extended upon the parties' joint motions. As amended November 1, 2024, the case management order set deadline for completion of all discovery on February 27, 2025, and deadline for dispositive motions on March 13, 2025.

Plaintiff filed the instant motions February 19, 2025, relying upon lease agreement and amendment, letter from defendant's officer Jon Parrish ("Parrish") to plaintiff's president Thomas J. Segrave ("Segrave") and counsel L. Forrest Owens ("Owens"), letter from Owens to Parrish, draft lease, email exchange between Owens, Jet 1 Charter, Inc. co-owner Keaton Phillips, and defendant's officer Joseph R. Locker, Jr. ("Locker"); deposition testimony by Locker, defendant's corporate representative Casey S. Askar ("Askar"), Parrish, Pinnacle Aviation employee Douglas William Young, II ("Young"), Keaton Phillips, Jet 1 Aviation, Inc. CEO Jeffrey Scott Phillips ("Scott Phillips"), and Segrave; and 125 deposition exhibits.

Defendant responded in opposition March 12, 2025, relying upon 14 documents earlier filed on the docket; defendant's objections to plaintiff's corporate deposition topics; deposition testimony of Segrave, plaintiff's corporate representative Darryl Shearer, Scott Phillips, Keaton Phillips, Young, Locker, Parrish, and Askar; notice of deposition of Deerwood Bank, Inc.; correspondence between counsel; the parties' respective designations of experts and rebuttal

---

² On August 8, 2023, defendant moved again for expedited court approval of the sale of the aircraft where the first buyer did not complete the sale. The court granted the motion the next day, on the same condition of deposit.

experts; defendant's supplemental discovery responses; and plaintiff's responses to defendant's first set of discovery requests.

Plaintiff replied March 26, 2025, relying upon chronology of events.

In the meantime, defendant filed motion for summary judgment March 12, 2025. On its own initiative, March 18, 2025, the court stayed plaintiff's deadline to respond to defendant's motion pending disposition of the instant motions.

## STATEMENT OF FACTS

The relevant facts alleged in the complaint and the documents attached thereto may be summarized as follows. Plaintiff operates an "aircraft charter company," (Compl. ¶ 4), and defendant owns "a Cessna model 560XL with serial number 560-5145" ("the aircraft"). (Id. ¶ 3). On March 2, 2020, the parties agreed that plaintiff would lease the aircraft pursuant to a written agreement ("the lease"). (See id. ¶ 6; DE 11 at 10-29).[3]

Plaintiff now alleges that during lease negotiations plaintiff was represented by outside counsel Owens, defendant was represented by its officer Locker, and Keaton Phillips acted as an intermediary. (See Prop. Am. Compl. (DE 81-3) ¶ 44).

The lease includes the following relevant language:

> **8.4 CROSS INDEMNIFICATION.** As between the parties hereto, such insurance coverage as is afforded by the Insurance Policies as set out herein shall provide and be the sole remedy for each entity for any and all loss or damage incurred by any party hereto, including but not limited to injury or death of persons, except in the case of the gross negligence or willful misconduct of a party (collectively, "Excess Damages").
>
> a. [Plaintiff's] Indemnity. With respect to Excess Damages, [plaintiff] hereby indemnifies and agrees to hold harmless [defendant], its officers, directors, agents, trustees, servants and employees from and against any and all liabilities, claims, demands, suits, judgments, damages, losses,

---

[3] Unless otherwise specified, page numbers in citations to the record in this order refer to the page number of the document designated in the court's case management and electronic case filing (CM/ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

costs and expenses (including reasonable legal expenses and attorneys' fees) for or on account of or in any way connected with injury to or death of any persons whomsoever or loss of or damage to any third party property arising out of (i) the gross negligence of [plaintiff] in connection with the use or the operation or maintenance of the Aircraft under this Agreement or in any way connected with this Agreement or (ii) any breach of applicable law binding on [plaintiff], or (iii) the performance or non-performance by [plaintiff] of its obligations and responsibilities under this Agreement, unless such loss or damage (a) arises from the gross negligence or willful misconduct of [defendant], its officers, directors, agents, servants or employees (excluding agents and servants employed by [plaintiff]) or (b) is the subject of [defendant's] indemnity set forth in the immediately succeeding paragraph.

    b.    [Defendant's] Indemnity With respect to Excess Damages, [defendant] hereby indemnifies and agrees to hold harmless [plaintiff], its officers, directors, agents, servants and employees from and against any and all liabilities, claims, demands, suits, judgments, damages, losses, costs and expenses (including reasonable legal expenses and attorneys' fees) for or on account of or in any way connected with injury to or death of any persons whomsoever or loss of or damage to any third party property arising out of (i) the gross negligence of [defendant] in connection with the use or the operation or maintenance of the Aircraft under this Agreement or in any way connected with this Agreement or (ii) any breach of applicable law binding on [defendant], or (iii) the performance or non-performance by [defendant] of its obligations and responsibilities under this Agreement unless such loss or damage (a) arises from the gross negligence or willful misconduct of [plaintiff], its officers, directors, agents, servants or employees or (b) is the subject of [defendant's] indemnity set forth in the immediately preceding paragraph

    c.    An indemnifying party's obligations under this Lease Agreement shall survive termination of this Agreement and shall remain in effect until all required indemnity payments have been made by the indemnifying party to the indemnified party or parties hereto.

**8.5    LIMITATION OF LIABILITY.** Notwithstanding anything above to the contrary, under no circumstances shall [plaintiff] or [defendant] be liable to each other for loss of revenue, income and nominal, incidental, special, exemplary, punitive, indirect or consequential damages.

(Lease (DE 88-4) at 6-7).

On January 26, 2022, the parties amended the lease to provide for refurbishment of the

5

Case 4:22-cv-00151-FL    Document 97    Filed 07/15/25    Page 5 of 16

aircraft. (See Compl. ¶ 8; DE 11 at 31). At some point on or before August 8, 2022, plaintiff learned that defendant had listed the aircraft for sale, and on August 8, plaintiff sent defendant a letter stating that plaintiff did "not agree or acquiesce to the sale of the aircraft or early termination of the lease[.]" (DE 11 at 32). Defendant informed plaintiff by response letter that it understood that plaintiff had "repainted the aircraft and refurbished the interior," which defendant maintained "violated and breached the terms of the lease." (Id. at 34). On November 14, 2022, defendant "took possession of the aircraft" (Id. at 36) and "requested the return of all aircraft documents." (Compl. ¶ 11).

### COURT'S DISCUSSION

The court addresses in turn plaintiff's motions to reconsider the court's prior order, for leave to amend its complaint, and to modify the scheduling order.

A.  Motion to Reconsider

   1.  Standard of Review

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Thus, "every order short of a final decree is subject to reopening at the discretion of the district judge." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). "[D]octrines such as law of the case . . . have evolved as a means of guiding that discretion," under which a prior ruling "must be followed unless (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."

Id. "[H]owever, it does not and cannot limit the power of a court to reconsider an earlier ruling," and "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Id.

2. Analysis

Plaintiff seeks reconsideration of that portion of the court's prior order dismissing plaintiff's claim for special damages in the form of lost profits.

In its prior order, the court determined that section 8.5 of the lease, titled "Limitation of Liability," (hereinafter "section 8.5"), "is unambiguous, specifying that 'under no circumstances' will the parties recover from each other for the specified damages," including loss of revenue, special, and consequential damages. (Prior Order (DE 71) at 9). The court considered but was unpersuaded by plaintiff's argument that section 8.5 only "applies to claims arising out of the operation of the aircraft." Id. at 10 (quoting Plf's Mem. (DE 63) at 18). The court therefore dismissed plaintiff's claim for special damages pursuant to Federal Rule of Civil Procedure 12(c). Id. at 11.

Plaintiff asserts reconsideration is necessary because the prior order was clearly erroneous due to a more reasonable interpretation of section 8.5 and because plaintiff presents newly discovered evidence. The court address each argument in turn.

    a.    Clear Error

Plaintiff argues the court's determination that the lease is unambiguous was "clearly erroneous" and capable of "work[ing] manifest injustice." Am Canoe Ass'n, 326 F.3d at 515. The court is not persuaded.

The "unambiguous terms of a contract are controlling regardless of what either party thought them to mean." Mobil Oil Corp. v. Wolfe, 297 N.C. 36, 39 (1979) (citing Howland v.

7

Stitzer, 240 N.C. 689 (1954)). "Whether a contract term is ambiguous or unambiguous in its context is a question of law." Smith-Phifer v. City of Charlotte, 118 F.4th 598, 614 (4th Cir. 2024). "Parties can differ as to the interpretation of language without its being ambiguous." Walton v. City of Raleigh, 342 N.C. 879, 881-82 (1996). Rather, "[a]n ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Galloway v. Snell, 384 N.C. 285, 288 (2023) (quoting Register v. White, 358 N.C. 691, 695 (2004)). However, "the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit." Weyerhaeuser Co. v. Carolina Power & Light Co., 257 N.C. 717, 719 (1962). Thus, the court must "enforce the parties' intent as evidenced by the clear and explicit language of the lease." Morrell v. Hardin Creek, 371 N.C. 672, 686 (2018).

Here, section 8.5 states that "under no circumstances shall [plaintiff] or [defendant] be liable to each other for loss of revenue, income and nominal, incidental, special, exemplary, punitive, indirect or consequential damages." (Lease (DE 8-3) at 7) (emphasis added). The court did not misunderstand plaintiff's argument that this language is ambiguous; it simply disagreed. (See Prior Order (DE 71) at 9-11). As the court stated, "[i]t is difficult to imagine a clause which limits liability more clearly." (Id. at 9).

No language in section 8.5 or elsewhere in the lease limits the clause's application to liability created by operation of the aircraft, and this court cannot insert language limiting section 8.5 to the insurance context where the parties did not elect to do so. As the court noted in its earlier order, "the parties knew how to limit the applicability of certain subsections to claims arising out of the operation of the aircraft." (Id. at 10). The court cannot now provide such limitation "under the guise of construction[]." Weyerhaeuser, 257 N.C. at 719. Accordingly, plaintiff's claim for

8

special damages cannot survive.

To the extent plaintiff asks the court to reconsider its interpretation of section 8.4 of the lease, titled "Cross Indemnification," ("section 8.4"), such reconsideration is futile. In its prior order, the court mistakenly stated that "the parties <u>waived</u> certain claims" described in this section 8.4. (<u>Prior Order (DE 71) at 10</u>) (emphasis added). Plaintiff is correct that section 8.4 <u>establishes</u> rather than waives indemnity liability between the parties for certain damages "connected with injury to or death of any persons whomsoever or loss of or damage to any third party property." (Lease (DE 8-3) at 6-7). However, this error in the court's prior order does not alter the court's conclusion that "the parties knew how to limit the applicability of certain subsections to claims arising out of the operation of the aircraft." (Prior Order (DE 71) at 10). Nor does it affect the ultimate conclusion that section 8.5 clearly and unambiguously bars any claim for special damages.

In sum, the court declines to reconsider on the basis of clear error that portion of its prior order dismissing plaintiff's claim for special damages in the form of lost profits

      b.      New Evidence

The United States Court of Appeals for the Fourth Circuit established a five-element test for new evidence-based motions to reconsider under Rules 59 and 60: (1) the evidence must be newly discovered; (2) the movant must have exercised due diligence to discover the new evidence; (3) the evidence is not cumulative or merely impeaching; (4) the evidence is material; and (5) the evidence is likely to produce a new outcome if the case were retried, or would require the judgment to be amended. <u>Boryan v. United States</u>, 884 F.2d 767, 771 (4th Cir. 1989). District courts within this circuit, including this one, have followed a similar approach and applied this test to motions under Rule 54. <u>See</u> <u>Best v. Butterball, LLC</u>, No. 4:22-cv-147-FL, 2024 WL 386921, at *2 (E.D.N.C. Jan. 31, 2024) (collecting cases).

9

Plaintiff argues Locker's deposition testimony regarding lease negotiations, which was not available at the time of the court's earlier decision, provides a basis for estopping defendant's arguments earlier made in support of its Rule 12(c) motion. Assuming without deciding that plaintiff's evidence satisfies the first four elements, the court is not persuaded that plaintiff's newly proffered evidence is likely to produce a different outcome if the matter were reconsidered, thus failing the fifth <u>Boryan</u> element. See 884 F.2d at 771.

In support of its motion, plaintiff points to the following: 1) excerpts from a draft of the lease with strikethroughs by Locker (defendant's officer) and highlights by Owens (plaintiff's counsel), indicating plaintiff's rejection of defendant's attempt to modify section 8.4 and remove section 8.5; 2) an email from Locker to Keaton Phillips (intermediary) indicating defendant's acceptance of plaintiff's rejection of Locker's edits; and 3) Locker's deposition testimony regarding that exchange:

> 8.4 **CROSS INDEMNIFICATION.** ~~As between the parties hereto, such insurance coverage as is afforded by the Insurance Policies as set out herein shall provide and be the sole remedy for each entity for any and all loss or damage incurred by any party hereto, including but not limited to injury or death of persons, except in the case of the gross negligence or willful misconduct of a party (collectively, "Excess Damages").~~
>
> a. <u>Lessee's Indemnity</u>. ~~With respect to Excess Damages,~~ Lessee hereby indemnifies and agrees to hold harmless Lessor, its officers, directors, agents, trustees, servants and employees from and against any and all liabilities, claims, demands, suits, judgments, damages, losses, costs and expenses (including reasonable legal expenses and attorneys' fees) for or on account of or in any way connected with injury to or death of any persons whomsoever or loss of or damage to any third party property arising out of (i) the ~~gross~~ negligence of Lessee in connection with the use or the operation or maintenance of the Aircraft under this Agreement or in any way connected with this Agreement or (ii) any

10

Case 4:22-cv-00151-FL     Document 97     Filed 07/15/25     Page 10 of 16

> breach of applicable law binding on Lessee, or (iii) the performance or non-performance by Lessee of its obligations and responsibilities under this Agreement, unless such loss or damage (a) arises from the ~~gross~~ negligence or willful misconduct of Lessor, its officers, directors, agents, servants or employees (excluding agents and servants employed by Lessee) or (b) is the subject of Lessor's indemnity set forth in the immediately succeeding paragraph.
>
> ~~b. Lessor's Indemnity. With respect to Excess Damages, Lessor hereby indemnifies and agrees to hold harmless Lessee, its officers, directors, agents, servants and employees from and against any and all liabilities, claims, demands, suits, judgments, damages, losses, costs and expenses (including reasonable legal expenses and attorneys' fees) for or on account of or in any way connected with injury to or death of any persons whomsoever or loss of or damage to any third party property arising out of the (i) gross negligence of Lessor in connection with the use or operation of the Aircraft under this Agreement or in any way connected with this Agreement or (ii) any breach of applicable law binding on Lessor or (iii) the performance or non-performance by Lessor of its obligations and responsibilities under this Agreement unless such loss or damage (a) arises from the gross negligence or willful misconduct of Lessee, its officers, directors, agents, servants, or employees or (b) is the subject of Lessor's indemnity set forth in the immediately preceding paragraph.~~
>
> b. An indemnifying party's obligations under this Lease Agreement shall survive termination of this Agreement and shall remain in effect until all required indemnity payments have been made by the indemnifying party to the indemnified party or parties hereto.
>
> 8.5 ~~LIMITATION OF LIABILITY. Notwithstanding anything above to the contrary, under no circumstances shall Lessee or Lessor be liable to each other for loss of revenue, income and nominal, incidental, special, exemplary, punitive, indirect or consequential damages~~**INTENTIONALLY LEFT BLANK**

(Draft Lease (DE 82-2) at 6-7).

> 6) 8.4 – Rejected. The goal of this term is to limit the liability to the coverages provided by the insurance. Insurance should be the sole remedy of damage to the aircraft. The indemnity clause needs to stay. The coverages for liability on the aircraft are to be $100M. If you think this is an issue please let me know. Agreed.

(Email Excerpt (DE 82-3) at 2).[4]

> Q. So does the strikeout font in this section here [pointing to section 8.5] indicate that this was language in the lease that you took out on your redline review?
> A. That's correct.
> Q. Can you explain why [defendant] wanted this language taken out of the draft lease?
> A. Yeah, I don't - - I don't recall.
> [Objection by counsel for defendant]
> * * *
> Q. . . . . Mr. Locker, I understand you answered you do not recall why [defendant] removed this language at 8.5 of this draft of the lease; is that correct?
> A. I think we were concerned that we didn't want to lose our revenue.
> Q. So then it's fair to say that the red highlight there indicates Mr. Owens

---

[4] The email does not include a corresponding explanation for rejection of edits to section 8.5. According to plaintiff, discussion of "8.4" here refers to the edits of both sections 8.4 and 8.5. (See Plf's Mem. (DE 82) at 26).

11

> rejected your change?
>
> A. That is correct.
> Q. And what was [defendant's] decision based on Mr. Owens' rejection --
> A. We accepted.
> Q. -- with respect to this --
> A. We accepted. We accepted his rejection.
> Q. What about his rejection changed [defendant's] determination about not losing revenue?
> A. Don't recall.
>
> * * *
>
> Q. Would you please let me know what [defendant's] understanding is of that sentence, "The goal of this term is to limit the liability to the coverages provided by the insurance"?
> [Objection by counsel for defendant]
> A. I think it pretty much speaks for itself. The understanding was - - the understanding was that we had plenty of insurance here, and that there was no need to have additional liability in addition to that.
>
> * * *
>
> Q. So, Mr. Locker, I believe you answered that [defendant] was comfortable limiting liability because of the presence of insurance. Now, I'm paraphrasing that. I don't think that's verbatim. But am I capturing the idea correctly that you're saying?
> [Objection by counsel for defendant]
> A. I think that we accepted that. I wouldn't describe it as being comfortable.
> Q. But the concept that you accepted would be that liability, the parties' liability to one another was limited, and the reason for that is because there is insurance coverage available; is that correct?
> [Objection by counsel for defendant]
> A. Yeah, I'd have to - - to review the whole thing in terms of the limits of liability.

(Locker Dep. (DE 82-4) at 82-87).

Generally, "estoppel may arise when the party to be estopped made a misleading representation on which the party asserting the estoppel reasonably relied to his detriment." Fox v. Baltimore City Police Dept., 201 F.3d 526, 533 (4th Cir. 2000) (citing Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984)). In North Carolina, the elements of equitable estoppel are:

> (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the

12

conduct of the party sought to be estopped to his prejudice.

Gore v. Myrtle/Mueller, 362 N.C. 27, 39 (2007). "Actual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of [e]stoppel." Id. at 40.

Plaintiff asserts that by agreeing to reinsert the indemnity clause in section 8.4 Locker represented that defendant agreed with plaintiff's rationale for keeping both sections 8.4 and 8.5. Therefore, according to plaintiff, defendant now should be estopped from arguing a different interpretation of section 8.5. Specifically, plaintiff now alleges that "Locker knew or should have known from his work on the draft [lease] that Plaintiff intended Section 8.5 to serve as a term limiting liability arising under Section 8 of the [lease], and only under Section 8 of the [lease], to coverages provided by insurance." (Prop. Am. Compl. (DE 88-3) ¶ 51).

Plaintiff's estoppel arguments are inapposite because the interpretation of the terms of a contract is a question of law, not of fact. Smith-Phifer, 118 F.4th at 611. Thus, defendant's interpretation of section 8.5 is not a fact that could have been misrepresented or concealed. Additionally, even if the court considers Locker's words to be a false representation or concealment of material facts, plaintiff has not persuaded the court that it relied on such conduct to its detriment. The parties negotiated the terms of the lease at arm's length, and plaintiff was represented by its attorney Owens. If plaintiff misunderstood the effect of section 8.5, that misunderstanding is not attributable to any conduct of defendant but to plaintiff's failure to fully assess the plain language of the contract. See Cara's Notions, Inc. v. Hallmark Cards, Inc. 140 F.3d 566, 571 (4th Cir. 1998) ("Both parties to such a commercial contract have a duty to read the contract carefully and are presumed to understand it."). Nor has plaintiff shown that it suffered any detriment from relying on defendant's alleged misrepresentation because section 8.5 applies equally to both parties. Plaintiff cannot bring a claim for special damages, nor can defendant.

13

Thus, defendant is not equitably estopped from arguing that section 8.5 bars plaintiff's claim for special damages.

North Carolina "also recognize[s] that branch of equitable estoppel known as 'quasi-estoppel' or 'estoppel by benefit.' " Whiteacre P'ship v. Biosignia, Inc., 358 N.C. 1, 18 (2004). This doctrine is "directly grounded . . . upon a party's acquiescence or acceptance of payment or benefits, by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts." Id. at 19. "[T]he essential purpose of quasi-estoppel is to prevent a party from benefitting by taking two clearly inconsistent positions." Id. at 18-19. Plaintiff argues that quasi-estoppel is appropriate here because "[d]efendant said it accepted [p]laintiff's view on Section 8.5 before [d]efendant said it didn't." (Plf's Mem. (DE 82) at 30). However, an agreement to include a provision in a contract is not "clearly inconsistent" with a subsequent argument as to the provision's meaning.

The position evidenced by the email exchange and Locker's testimony is not "clearly inconsistent" with defendant's arguments in its motion for judgment on the pleadings. See Whiteacre, 358 N.C. at 19. In the email exchange, which appears to refer only to section 8.4, Locker "Agreed" that "The indemnity clause needs to stay" in the lease because "[i]nsurance should be the sole remedy of damage to the aircraft." (Ex. (DE 82-3) at 2). This indicates nothing about either party's position as to remedies for breach. Nor does Locker's statement that "there was no need to have additional liability in addition to [insurance]." (Locker Dep. (DE 82-4) at 85). Therefore, defendant is not equitably estopped from arguing, as it did in its motion for judgment on the pleadings, that section 8.5 limits all remedies between the parties, including for breach.

In sum, plaintiff's new evidence regarding the lease negotiations does not give rise to

14

equitable or quasi-estoppel. Discovery in this case has not altered the unambiguous language of section 8.5 or demonstrated circumstances necessary for equitable relief. Because defendant is not estopped from arguing that the unambiguous language of the lease bars claims for special damages, the court again declines to reconsider that portion of its prior order, on the basis of new evidence

B.      Motion to Amend

    1.      Standard of Review

When more than 21 days have passed following service of responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. "[L]eave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009). Where an "amended complaint could not withstand a motion to dismiss, [a] motion to amend should be denied as futile." Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995). Additionally, "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).

    2.      Analysis

The instant motion to amend was filed two years after plaintiff's February 17, 2023, deadline, so plaintiff must demonstrate good cause to be granted leave. See id.

Plaintiff's proposed amendment includes additional factual allegations in support of its claim for special damages. Where the court declines to reconsider its dismissal of such claim,

15

Case 4:22-cv-00151-FL    Document 97    Filed 07/15/25    Page 15 of 16

plaintiff's amendments thereto are futile.[5]  In the proposed amended complaint, plaintiff also refashions its claim for breach of quiet enjoyment as one for damages under N.C. Gen. Stat. §§ 25-2A-508, -519, and -520.  Where plaintiff makes no argument in support of this change, plaintiff has not demonstrated good cause to be granted leave to make such amendment at this juncture.  Plaintiff's motion for leave to amend is therefore denied.

    C.    Scheduling

At the time plaintiff filed the instant motion, the only remaining deadlines were February 27, 2025, for completion of all discovery and March 13, 2025, for dispositive motions.  Where plaintiff's motion to amend its complaint is denied, neither party expresses a need for further discovery on remaining claims, and plaintiff indicates that it does not plan to file dispositive motion, the court does not find good cause to alter its scheduling order.  The court, however, lifts the stay it imposed March 18, 2025, on the terms set forth below.

**CONCLUSION**

Based on the foregoing, plaintiff's motions (DE 87, 88) are DENIED.  Stay of plaintiff's deadline to respond to motion for summary judgment is LIFTED.  Plaintiff shall file such response within 21 days of entry of this order.  Defendant shall have 14 days to file a reply, if any.

SO ORDERED, this the 14th day of July, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[5] Where the court finds plaintiff's motion futile, it does not reach defendant's arguments of prejudice and undue delay.